Irene R. Martin v. Commissioner.
Martin v. Commissioner
Docket No. 21601.
United States Tax Court
1953 Tax Ct. Memo LEXIS 374; 12 T.C.M. (CCH) 129; T.C.M. (RIA) 53044; February 12, 1953
*374 Held, under all the facts, petitioner, her daughter, and her sister-in-law entered into a valid partnership for the taxable years 1944 and 1945. James P. Hill, Esq., and William R. Frazier, Esq., for the petitioner. William W. Oliver, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax for the years 1944 and 1945 in the amounts of $9,933.12 and $15,147.74, respectively. The sole issue is whether petitioner is taxable upon income which was reported as partnership income distributable equally to petitioner, her daughter, and her sister-in-law. Findings of Fact Petitioner is an individual residing in Eustis, Florida. She filed individual income tax returns for the years in question with the collector of internal revenue for the district of Florida. Petitioner married John A. Martin (hereinafter referred to as John) in 1927. He died in 1942 as a result of an automobile accident. From the time of her marriage until the time of John's death, petitioner was a housewife. She engaged in no business activities. Petitioner's only child, Patricia Jane Martin (hereinafter referred to as *375 Patricia), was about 14 years old on January 1, 1944. Following the death of John, petitioner was appointed guardian of Patricia. This guardianship was released about 1948. Georgia Ferry (hereinafter referred to as Georgia) was John's sister. She resided with petitioner and her husband, as a member of the family, from 1936 and continued to reside with petitioner after John's death in 1942. On January 1, 1944, she was about 55 years old. In 1935, John purchased a 170-acre orange grove for $51,500, taking title with his wife as tenants by the entirety. A mortgage was given for part of the purchase price. Sometime prior to 1941, petitioner and John had opened a savings account for Patricia. The account was in her name, with petitioner and John as trustees. In 1941, the balance was somewhat in excess of $3,000, and at that time they withdrew $3,000 to make a final payment on the mortgage on the 170-acre orange grove. John died intestate, and the following comprised his estate: Items
Value
Proceeds of insurance policy
$ 1,000.00
4 Government checks
540.94
Personal effects
50.00
U.S. Saving Bond
37.50
1 Cadillac 1942 model
2,000.00
1/3 interest in undistributed profits
from operation of Banks Grove prop-
erty
4,000.00
1/3 interest in 118 acres of citrus groves
known as Banks Grove
29,000.00
Total assets
$36,628.44
*376 Petitioner and Patricia, the only child, were each entitled to one-half of his estate under Florida law. the 170-acre grove, known as the "Martin Grove", went to the petitioner as the surviving tenant by the entirety. Petitioner sold decedent's interest in the Banks Grove, on January 8, 1943, for $29,333. On June 30 of that year, she purchased a 10-acre grove, known as the "Carpenter Grove", using the funds from the sale of the Banks Grove. The deed named petitioner and Patricia as grantees. From the time of John's death until the end of 1943, petitioner personally operated the grove properties. She was in a poor state of health during this period, and also experienced difficulty in operating the groves because of her lack of prior business experience and war-time labor shortages. During 1943, petitioner discussed the possibility of selling or leasing her groves with her attorney who, in addition to legal advice, rendered advisory technical assistance in the actual operation of the groves. He received a fee of 5 per cent of the gross selling price of the fruit for such services during the taxable years in question. All books and records of the business were kept by a bookkeeper *377 in his employ. In the fall of 1943, petitioner at one time inquired of her attorney about the advisability of forming a corporation, but he discouraged her. Shortly thereafter, he suggested that one solution of petitioner's problem regarding labor and her own inability to do much because of her poor health would be to establish an operating partnership between herself, Patricia, and Georgia. Prior to this time, Patricia was in school and Georgia did no work in connection with the groves. This suggestion was followed and, on January 1, 1944, a partnership agreement was executed between petitioner, Patricia, and Georgia. Such agreement recited that it was to carry on the business of "the growing, buying, selling, picking, hauling and processing of citrus fruits." The agreement also provided that each of the parties contribute one-third of the capital necessary for carrying on the business, and that all assets were to be owned, and profits or losses to be shared, in the same proportion. The business was to be conducted on "property to be acquired, dealt in or leased by the partnership." There was no intention that the realty be turned over to the partnership. Georgia did not contribute *378 any capital to the business since she had none. After the formation of the partnership, on January 1, 1944, a partnership account was opened in the First National Bank of Orlando, Florida. All three partners were authorized to draw checks on this account. Because of her ill health, petitioner rendered largely administrative services to the partnership, such as keeping records to be turned over to the bookkeeper, and writing of checks. Patricia and Georgia checked and supervised the picking of fruit, assisted in cultivating and pruning, firing the groves in case of a freeze, supervising the fertilizing of the groves, and other necessary tasks. Georgia did most of the checking and supervising of the fruit picking, and, during the fruit picking periods, she was in the groves daily making sure that the count of boxes was correct; that the boxes were not overloaded; and that the ripe fruit was picked and green fruit left on the trees. Georgia had never performed any of these tasks prior to January 1, 1944, even though she had been making her home with petitioner. Patricia, who was both physically and mentally mature for her age, was the only one of the three who could drive an automobile. *379 Because of the war-time labor shortage, the partnership was dependent primarily on day laborers, some of whom were soldiers who would work in the groves on their free days. Patricia was the one who drove around recruiting labor. She also drove a truck, used in the operation of the business, to pick up necessary materials and supplies. None of the women had had any business experience and their method of operation was very informal. Petitioner had a number of charge accounts located throughout the country, and all three of them charged their purchases to these accounts. Medical and grocery bills were handled in the same manner. When bills became due, petitioner wrote the checks to cover them. When the parties felt there was sufficient cash on hand to warrant some distribution, the amount would be divided into three parts and each person received her share. The parties were satisfied that during the taxable years they all received approximately equal shares of the business income. During the taxable years, Patricia's attendance at school was intermittent. When she was needed in the groves she did not attend classes. She was married in August of 1945 while in Chicago, and she and *380 her husband returned to her home in October of that year, so that she would be on hand to work in the groves. Georgia was gradually losing her hearing and by the end of 1945 was almost totally deaf. However, she was adept at lip reading. Her main interests had been painting and music. Toward the end of 1945, she commenced drinking intoxicating beverages and developed into an alcoholic. This upset petitioner and she suggested that Georgia should make her home elsewhere. In January of 1946, Georgia withdrew voluntarily from the partnership, at the suggestion of petitioner, and executed a general assignment of all her right, title, and interest to petitioner and Patricia. She was given some money as her share of the profits, but was paid nothing for the actual assignment of the interest. The respondent, in his statutory notice of deficiency, determined that the partnership was invalid and taxed all the income to petitioner. He allowed salaries in the amount of $3,600 each, per year, for 1944 and 1945 for services rendered in the operation of the groves by Patricia and Georgia. During the years 1944 and 1945, the parties intended to and did enter into a bona fide partnership. *381 Opinion RICE, Judge: Whether the parties intended to and did enter into a bona fide partnership arrangement is primarily a question of fact. . Following the death of her husband, petitioner had a comparatively small amount of cash and two citrus groves. Although she was totally lacking in business experience, she attempted to operate them as a sole proprietor, but, because of her ill health and war-time labor shortages, she was unsuccessful. She discussed the possibility of selling or leasing the groves with her attorney. Her daughter and sister-in-law, who were living with her, did not help her in the operation of the groves. In the fall of 1943, she discussed with her attorney the possibility of incorporating, but he advised her against it. Shortly thereafter, he suggested that she enter into a partnership with Patricia and Georgia so that they could relieve her of some of the physical work. As a result of this suggestion, petitioner, Patricia, and Georgia entered into the partnership agreement of January 1, 1944. The partnership was an operating partnership. Patricia and Georgia were each to receive one-third of the *382 profits in return for the services which they would render. They lived up to the terms of the agreement and relieved petitioner of many of the burdens involved in operating the business. Her services thereafter were largely of an administrative character. Patricia and Georgia supervised the laborers, checked while fruit was being picked, helped with the cultivating of the property, and other necessary tasks. Patricia attended school only when she was not needed in the groves. She did all the driving and helped recruit labor. The respondent himself recognized that Patricia and Georgia rendered services to the business, by allowing a deduction of $3,600 each, for each of the years before us, as compensation to Patricia and Georgia for services rendered. While it is true that the method of distributing the profits was informal, it must be remembered that all of the women were totally lacking in business experience. They were satisfied, and we are satisfied, that they all shared equally in the profits. Considering all the facts, the parties intended to and did enter into a bona fide partnership and respondent erred in his determination that all the income during the taxable years was *383 taxable to petitioner. Due to certain concessions made by respondent at the hearing and in brief, and to certain uncontested adjustments, Decision will be entered under Rule 50.